ROCKY MOUNTAIN ASSOCIATES INTERNATIONAL, INC., AND ROCKY MOUNTAIN ASSOCIATES EXPORT, INC., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 44562-85.          Filed June 21, 1988.

*Robert Shaiman,* for the petitioners.
*Barbara E. Horan,* for the respondent.

NIMS, *Chief Judge:* Respondent determined a deficiency in Federal corporate income tax of petitioner Rocky Mountain Associates International, Inc., for the taxable year ended December 31, 1980, in the amount of $82,980, and a deficiency in Federal corporate income tax of petitioner Rocky Mountain Associates Export, Inc., for the taxable year ended October 31, 1980, in the amount of $166,059. The issues for determination in this case are: (1) Whether Rocky Mountain Associates Export, Inc. (Export), qualified as a domestic international sales corporation (DISC) for the taxable year ended October 31, 1980; (2) if Export failed to

qualify as a DISC for the year in issue, whether there was a deficiency in Export's income tax or a deficiency in income tax of its parent corporation, Rocky Mountain Associates International, Inc. (RMAI); and (3) if Export qualified as a DISC for the year in issue, whether Export and RMAI reported incorrect amounts of commission income, deemed dividends, and commission expense for the years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner Rocky Mountain Associates International, Inc. (RMAI), is a Colorado corporation whose principal place of business was in Denver, Colorado, at the time the petition in this case was filed. RMAI reported its income on a calendar year basis during the taxable year 1980.

Petitioner Rocky Mountain Associates Export, Inc. (Export), is a Colorado corporation whose principal place of business was in Denver, Colorado, at the time the petition in this case was filed. Export reported its income on the basis of a fiscal year ending on October 31.

Export was organized on December 27, 1977, and at all material times was the wholly owned subsidiary of RMAI. Upon organization, Export duly elected to be treated as a domestic international sales corporation (DISC) under section 991,[1] and the election remained in effect at all material times.

RMAI's tax return for the taxable year ended December 31, 1980, was received by respondent on September 22, 1981. RMAI filed an amended return for the taxable year ended December 31, 1980, that was received by respondent on January 14, 1982.

Export's tax return for the fiscal year ended October 31, 1980, was received by respondent on July 15, 1981. Export filed an amended return for the fiscal year ended October 31, 1980, that was received by respondent on November 4, 1981.

---

[1]Except as otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

At all relevant times, RMAI was in the business of manufacturing and selling orthodontic supplies, devices, and other products that were marketed on a worldwide basis. Export was organized by RMAI to be a commission DISC, earning commissions from RMAI in connection with the sale of RMAI products in nondomestic markets.

RMAI and Export entered into a commission agreement (agreement) which provided that Export would receive from RMAI, as a commission on all sales of products to which Export was granted a sales franchise, an amount that would permit Export to derive the maximum permissible amount of taxable income attributable to such sales as permitted under section 994. The agreement also provided that the commissions would be due and payable by RMAI to Export within 60 days after the close of Export's taxable year.

During its taxable year ended October 31, 1980, Export was entitled to earn a commission from RMAI pursuant to the terms of the agreement. On its return for the taxable year ended October 31, 1980, Export incorrectly reported the amount of the commission. The correct amount of the commission was $308,443.

On some date within the period July through October 1981, RMAI executed and delivered to Export a promissory note backdated to November 15, 1980. The backdated promissory note evidenced a principal amount due by RMAI to Export of $361,699, equal to the commission expense reported by RMAI on its return for the calendar year 1980.

RMAI did not pay by cash or check the commission receivable by Export within the 60-day period following the last day of Export's fiscal year ended October 31, 1980. Nor did RMAI pay the backdated promissory note by cash or check during the 60-day period following the last day of Export's fiscal year ended October 31, 1980. RMAI never made any payments by cash or check on the backdated note.

On its return for the calendar year 1980, RMAI reported a deemed dividend by Export to RMAI in the amount of $180,741. On the same return, as previously stated, RMAI reported $361,699 as a DISC commission expense.

The balance sheet of the amended tax return filed by Export for the taxable year ended October 31, 1980, reflects total assets of $367,123, of which $361,699 was classified as a producer's loan.

During the course of respondent's audit of petitioners' books and records, respondent's international examiner asked RMAI's comptroller for the promissory note underlying the producer's loan reflected on Export's amended tax return for the taxable year ended October 31, 1980. The comptroller provided the examiner with the $361,699 backdated promissory note.

The backdated promissory note provides as follows:

November 15, 1980

$361,699.00

Five years after date, for value received, we promise to pay to Rocky Mountain Associates Export, Inc. on order Three Hundred Sixty One Thousand Six Hundred Ninety Nine and 00/100 dollars with interest from November 15, 1980 at the rate of one and one half per cent over the prevailing Denver banks' prime interest rate per annum payable annually. This obligation is designated a Producer's Loan within the meaning of section 993(d) of the Internal Revenue Code.

(Signed) _____

NELSON M. TOMPKINS
*Vice President, Finance and Administration*
(For) ROCKY MOUNTAIN/ASSOCIATES
INTERNATIONAL, INC.

Export did not establish a commissions receivable account on its books and records with respect to commissions earned during the taxable year ended October 31, 1980. Export's books and records (general ledger) for the fiscal year ended October 31, 1980, reflect a note receivable from RMAI in the amount of $361,699.

OPINION

*DISC Qualification*

Respondent determined that the deficiencies in this case resulted from Export's failure to qualify as a DISC. Petitioners bear the burden of proving that respondent's determinations were incorrect. Rule 142(a).

Congress enacted the DISC provisions in 1971[2] to provide tax deferral for a portion of the income earned by U.S. corporations from the sale or lease of domestic products to foreign purchasers or lessees. The basic scheme allows a domestic production company to establish a DISC to handle its export sales and leases. Because of the minimal capitalization and organizational requirements, a DISC may be no more than a corporation that serves primarily as a bookkeeping device to measure the amount of export earnings that are subject to tax deferral. *Thomas International, Ltd. v. United States*, 773 F.2d 300, 301 (Fed. Cir. 1985); *Gibbons International, Inc. v. Commissioner*, 89 T.C. 1156 (1987); *Anchor Hocking Corp. v. United States*, 11 Cl. Ct. 173, 174 (1986).

Section 991[3] provides that a corporation that qualifies as a DISC is not subject to Federal income taxation (except for the tax imposed by chapter 5 on transfers to avoid income tax). A portion of the earnings and profits of a DISC are taxable each year to its shareholder as a deemed distribution. Sec. 995(b)(1);[4] *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 391-392 (1984); *Gehl Co. v. Commissioner*, 795 F.2d 1324, 1327 (7th Cir. 1986), affg. in part and revg. in part on another issue T.C. Memo. 1984-667; *Gibbons International, Inc. v. Commissioner, supra.* The remaining earnings and profits of the DISC are accumulated and not taxed until they are actually distributed to the shareholder (sec. 996(a)(1)), until a shareholder disposes of its DISC stock in a taxable transaction (sec. 995(c)), or until the corporation ceases to qualify as a DISC (sec. 995(b)(2)). *Gehl Co. v. Commissioner, supra* at 1327; *Gibbons International, Inc. v. Commissioner, supra.*

---

[2]Secs. 501-507 of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, 535-553.

[3]Sec. 991 provides:

For purposes of the taxes imposed by this subtitle upon a DISC (as defined in section 992(a)), a DISC shall not be subject to the taxes imposed by this subtitle except for the tax imposed by chapter 5.

[4]Sec. 995(b)(1) as in effect during the years in issue provided that the deemed distribution was approximately one-half of the DISC's earnings and profits. In sec. 68(d) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 588, Congress changed the amount of the deemed dividend by amending sec. 995(b)(1). Congress again amended sec. 995(b)(1) in sec. 1876(b)(2)(A) and (B) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2898. None of these amendments apply to the years in issue in this case.

A corporation must meet the requirements set forth in section 992(a)(1)[5] to qualify as a DISC. Respondent maintains that Export failed to qualify as a DISC for the taxable year ended October 31, 1980, because it failed to meet the qualified export assets test. To maintain its status as a DISC under section 992(a)(1)(B), a corporation must have qualified export assets at the close of the taxable year whose adjusted basis equals or exceeds 95 percent of the adjusted basis of all its assets. Included in the definition of qualified export assets are obligations arising in connection with a producer's loan. Sec. 993(b)(5).[6]

---

[5]Sec. 992(a)(1) as in effect during the year in issue provided:

(1) DISC.—For purposes of this title, the term "DISC" means, with respect to any taxable year, a corporation which is incorporated under the laws of any State and satisfies the following conditions for the taxable year:

(A) 95 percent or more of the gross receipts (as defined in section 993(f)) of such corporation consist of qualified export receipts (as defined in section 993(a)),

(B) the adjusted basis of the qualified export assets (as defined in section 993(b)) of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year,

(C) such corporation does not have more than one class of stock and the par or stated value of its outstanding stock is at least $2,500 on each day of the taxable year,

(D) the corporation has made an election pursuant to subsection (b) to be treated as a DISC and such election is in effect for the taxable year * * *

[6]Sec. 993(b) provides:

(b) QUALIFIED EXPORT ASSETS.—For purposes of this part, the qualified export assets of a corporation are—

(1) export property (as defined in subsection (c));

(2) assets used primarily in connection with the sale, lease, rental, storage, handling, transportation, packaging, assembly, or servicing of export property, or the performance of engineering or architectural services described in subparagraph (G) of subsection (a)(1) or managerial services in furtherance of the production of qualified export receipts described in subparagraphs (A), (B), (C), and (G) of subsection (a)(1);

(3) accounts receivable and evidences of indebtedness which arise by reason of transactions of such corporation or of another corporation which is a DISC and which is a member of a controlled group which includes such corporation described in subparagraph (A), (B), (C), (D), (G), or (H), of subsection (a)(1); .

(4) money, bank deposits, and other similar temporary investments, which are reasonably necessary to meet the working capital requirements of such corporation;

(5) obligations arising in connection with a producer's loan (as defined in subsection (d));

(6) stock or securities of a related foreign export corporation (as defined in subsection (e));

(7) obligations issued, guaranteed, or insured, in whole or in part, by the Export-Import Bank of the United States or the Foreign Credit Insurance Association in those cases where such obligations are acquired from such Bank or Association or from the seller or purchaser of the goods or services with respect to which such obligations arose;

(8) obligations issued by a domestic corporation organized solely for the purpose of financing sales of export property pursuant to an agreement with the Export-Import Bank of the United States under which such corporation makes export loans guaranteed by such bank; and

(9) amounts (other than reasonable working capital) on deposit in the United States that are utilized during the period provided for in, and otherwise in accordance with, regulations prescribed by the Secretary to acquire other qualified export assets.

On the balance sheet accompanying Export's amended return for the taxable year ended October 31, 1980, Export reported total assets in the amount of $367,123. Of that amount, $361,699, evidenced by the backdated promissory note, was denominated a producer's loan. However, the $361,699 evidenced by the backdated promissory note failed to meet the requirements of a producer's loan under section 993(d)(1). Since petitioners now concede that the $361,699 did not qualify as a producer's loan, we need not outline the reasons why the statutory requirements of a "producer's loan" were not met. Unless petitioners can find another way to establish that the $361,699 promissory note was a qualified export asset, we must hold that Export failed to meet the DISC requirements for the taxable year ended October 31, 1980.

Petitioners take the position that the backdated promissory note actually represented a commission receivable by Export from RMAI and therefore was a qualified export asset under section 993(b)(3). Petitioners were too late in attempting to recharacterize the amount in question.

Although Export was entitled to earn commission income from RMAI under the agreement, Export's books never contained a formal commissions receivable account. Export's amended tax return for the taxable year ended October 31, 1980, reflects a producer's loan rather than commissions receivable. Export's general ledger reflects a note receivable rather than commissions receivable from RMAI as of October 31, 1980. The note evidencing the $361,699 indebtedness from RMAI to Export recites that the obligation that it represents is a producer's loan.

Even if petitioners can transform into a commission receivable an obligation that failed to satisfy the requirements for a producer's loan, the obligation nevertheless failed to satisfy the requirements for a qualified export asset. Section 993(b) contains a list of qualified export assets for purposes of the DISC provisions. Commissions receivable are not specifically included in the list. However, under section 993(b)(3) certain accounts receivable and evidences of indebtedness are qualified export assets.

In interpreting section 993(b)(3), the regulations include commissions receivable in the definition of accounts receiv-

able and evidences of indebtedness but place certain limitations on the commissions receivable before they will be considered qualified export assets. Section 1.993-2(d)(2), Income Tax Regs., provides in pertinent part:

(2) *Trade receivables representing commissions.* If a DISC acts as commission agent for a principal in a transaction described in sec. 1.993-1(b), (c), (d), (e), (h), or (i) which results in qualified export receipts for the DISC, and if an account receivable or evidence of indebtedness held by the DISC and representing the commission payable to the DISC as a result of the transaction arises (*and, in the case of an evidence of indebtedness, designated on its face as representing such commission*), such account receivable or evidence of indebtedness shall be treated as a trade receivable. If, however, the principal is a related supplier (as defined in sec. 1.994-1(a)(3)) with respect to the DISC, such account receivable or evidence of indebtedness will not be treated as a trade receivable unless it is payable and paid in a time and manner which satisfy the requirements of sec. 1.994-1(e)(3) * * * [Emphasis added.]

The amount in question in this case failed to satisfy the requirements of section 1.993-2(d)(2), Income Tax Regs. No account receivable had been established on Export's books, and there was no evidence of indebtedness held by Export designated on its face as representing a commission receivable from RMAI. Furthermore, RMAI owned 100 percent of Export's stock and therefore was a related supplier with respect to Export (see secs. 1.482-1(a), 1.994-1(a)(3), Income Tax Regs.), and the $361,699 was not paid in the time and manner required by section 1.994-1(e)(3), Income Tax Regs.

Section 1.994-1(e)(3)(ii), Income Tax Regs., provides that payment of a commission receivable may be in the form of a written obligation that satisfies the safe harbor rule of section 1.992-1(d)(2)(ii),[7] Income Tax Regs. Petitioners contend that the note evidencing RMAI's indebtedness to

---

[7]Sec. 1.992-1(d)(2)(ii), Income Tax Regs., provides in part:

(ii) *Safe harbor rule.* Purported debt of a DISC will in no event be treated as other than debt for purposes of subdivision (i) of this subparagraph if—

(*a*) It is a written obligation to pay a sum certain on or before a fixed maturity date,

(*b*) Interest is payable on such purported debt at an arm's length interest rate (as determined under sec. 1.482-2(a)(2)), expressed as a fixed dollar amount or a fixed percentage of principal,

(*c*) Such purported debt is not convertible into stock or into other purported debt unless such other purported debt qualifies under this subparagraph as debt of the DISC.

(*d*) Such purported debt does not confer voting rights upon its holder, except in the event of default thereon, and

(*e*) Interest and principal are paid in accordance with the terms of such purported debt or with any modification of such terms consistent with (*a*) through (*d*) of this subdivision.

Export satisfies this requirement. However, petitioners have failed to show that the note in question was paid in accordance with its terms or that the note was modified and paid in accordance with the modification of its terms as required by section 1.992-1(d)(2)(ii)(e), Income Tax Regs.

A certified public accountant employed by RMAI testified that the note was canceled in 1985 when Export ceased to exist because of changes in the tax law. Petitioners maintain that the cancellation of the note constituted payment. However, petitioners have failed to produce evidence that the note was modified, nor can we find that cancellation of the note constituted payment within the meaning of section 1.992-1(d)(2)(ii)(e), Income Tax Regs. Cf. *CWT Farms, Inc. v. Commissioner,* 79 T.C. 1054, 1066 (1982), affd. 755 F.2d 790 (11th Cir. 1985) (to permit indefinite postponement [and therefore nonpayment] of a commission receivable by a related supplier would frustrate congressional purpose to assure that the DISC's tax-deferred profits are used for exporting activities by allowing circumvention of the producer loan limitation).

Moreover, the note in question failed to satisfy the requirements of section 1.994-1(e)(3)(i), Income Tax Regs., which provides in part:

The amount of * * * a sales commission (or reasonable estimate thereof) actually charged by a DISC to a related supplier * * * must be paid no later than 60 days following the close of the taxable year of the DISC during which the transaction occurred.

Petitioners maintain that the note evidencing RMAI's indebtedness to Export was dated November 15, 1980, and therefore constituted payment within 60 days of Export's taxable year ended October 31, 1980. However, the note in question did not exist until July 1, 1981, at the earliest. Because there was no written obligation evidencing RMAI's indebtedness to Export or any other form of payment of a commission receivable permitted under section 1.994-1(e)(3)(ii), Income Tax Regs., by RMAI to Export within 60 days following the close of Export's taxable year ended October 31, 1980, the $361,699 was not a qualified export asset. On its tax return for the taxable year ended October 31, 1980, Export reported total assets of $367,123. Because the adjusted basis of Export's qualified export assets at the

close of the taxable year in issue did not equal or exceed 95 percent of all its assets as required by section 992(a)(1)(B), Export failed to qualify as a DISC for that year.

Petitioners argue in the alternative that section 1.993-2(d)(2), Income Tax Regs., is invalid in that it requires payment of a commission payable to a DISC by a related supplier within 60 days after the close of the DISC's taxable year. This Court and other courts have already addressed petitioners' arguments and upheld section 1.993-2(d)(2), Income Tax Regs., as valid. See, e.g., *CWT Farms, Inc. v. Commissioner, supra; Gehl Co. v. Commissioner, supra; Thomas International, Ltd. v. United States, supra; LeCroy Research Systems Corp. v. Commissioner,* 751 F.2d 123 (2d Cir. 1984), affg. on this issue and revg. on other grounds T.C. Memo. 1984-145.

Petitioners rely on *Thomas International, Ltd. v. United States,* 6 Cl. Ct. 414 (1984), revd. 773 F.2d 300 (Fed. Cir. 1985), in which the Claims Court held that section 1.993-2(d)(2), Income Tax Regs., was invalid. Not only do we disagree with the analysis by the Claims Court, but we also note that the opinion of the Claims Court was reversed by the Federal Circuit.

We have considered petitioners' other arguments on this issue and find them meritless.

### Tax Consequences of DISC Disqualification

Because we hold that Export failed to qualify as a DISC for its taxable year ended October 31, 1980, it is unnecessary for us to decide whether Export and RMAI reported incorrect amounts of commission income, deemed dividends, or commission expenses for the years in issue. It is necessary, however, for us to decide the proper tax consequences to Export and RMAI resulting from Export's disqualification for its taxable year ended October 31, 1980.

Respondent issued notices of deficiency to Export and to RMAI in which he in effect takes alternative positions. In his notice of deficiency to Export, respondent determined that Export did not qualify as a DISC for its taxable year ended October 31, 1980, and therefore was taxable on the commissions to which it was entitled under the agreement. In his notice of deficiency to RMAI, respondent determined

that because Export did not qualify as a DISC, RMAI was not taxable on the deemed distribution from Export but that the accrued commissions payable to Export were not deductible by RMAI.

Petitioners maintain that even if Export did not qualify as a DISC for the year in issue, Export was a viable corporation and therefore the commission income to which Export was entitled was taxable to Export, and RMAI was entitled to a deduction for the commission payable to Export as of October 31, 1980.

We agree with respondent's determination insofar as RMAI is concerned, but we do not agree with his determination insofar as Export is concerned. We agree with petitioners that Export was a viable corporation, but we disagree with their proposed tax treatment of Export and RMAI.

Once a corporation loses its DISC qualification, section 991 no longer applies and the former DISC is taxable as a domestic corporation for the income it has earned for the taxable year in which it loses its DISC status. *Addison International, Inc. v. Commissioner*, 90 T.C. 1207 (1988), decided this date. Accordingly, Export was taxable as a domestic corporation for the taxable year ended October 31, 1980.

However, Export did not earn any income for the taxable year ended October 31, 1980. None of the $361,699 Export reported as income on its amended return for the taxable year ended October 31, 1980, attributable to the backdated note to Export from RMAI, was ever paid by RMAI, as discussed *supra* at page 1239 of this opinion.

Because Export failed to qualify as a DISC for the taxable year ended October 31, 1980, RMAI is not taxable on the $180,741 it reported as deemed dividend income from Export on its return for the calendar year 1980. However, we must also disallow the deduction claimed by RMAI as a commission expense in the amount of $361,699 for its taxable year 1980.

As we have stated previously, Export did not earn any commission income for its taxable year ended October 31, 1980. Accordingly, RMAI did not incur a commission expense under the agreement. Moreover, we have found that RMAI never paid any commissions nor did it accrue any

commissions. Furthermore, the evidence shows that RMAI did not intend to pay Export a commission during the taxable year ended October 31, 1980. As we explained earlier, Export's books and records and tax return refer to the amount in question as a producer's loan. The note, itself, recites that it represents a producer's loan. Therefore, RMAI is not entitled to deduct any commission expenses attributable to Export for its taxable year 1980.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

PARKER, SHIELDS, COHEN, JACOBS, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.*, agree with the majority opinion.

STERRETT, *J.,** concurs in the result only.

HAMBLEN and CLAPP, *JJ.*, dissent.

---

WHITAKER, *J.*, concurring: This is a companion case to *Addison International, Inc. v. Commissioner*, 90 T.C. 1207 (1988), in which I joined the dissenting opinion of my colleague, Judge Ruwe. Since it appears in this case that no income was earned by Export—the DISC—Judge Ruwe's analysis in his dissent in *Addison* would produce in this case the same result as that reached by the majority. For that reason, I concur in the result only.

KÖRNER, *J.*, agrees with this concurring opinion.

---

SWIFT, *J.*, dissenting: The majority concludes that Export is to be taxed as a domestic corporation for its taxable year ending October 31, 1980. As a domestic corporation and as an accrual basis taxpayer,[1] Export is governed by the

---

*This opinion was reviewed by the Court prior to Chief Judge Sterrett's resignation from the Court.

[1]Although the majority does not expressly state that Export is an accrual basis taxpayer, such is implied by the majority's opinion at page 1233 that $308,443 of commissions receivable was reportable on Export's 1980 tax return.

principal of the accrual method of tax accounting under which receivables are included in taxable income in the year all events occur which fix Export's right to that income. Sec. 1.446-1(c)(1)(ii), Income Tax Regs.; *Spring City Foundry Co. v. Commissioner*, 292 U.S. 182, 184 (1934); *Chesapeake Financial Corp. v. Commissioner*, 78 T.C. 869, 877 (1982). The above principle of the acrual method of accounting is not affected by when receivables are actually received, nor by whether a taxpayer establishes a bookkeeping account reflecting its entitlement to the receivables. As the Supreme Court stated—

it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. [*Spring City Foundry v. Commisioner, supra* at 184. Emphasis in original.]

Based on the majority's factual finding that (under the commission agreement between Export and RMAI) Export was entitled to $308,443 in commissions from RMAI at the end of its 1980 taxable year, Export should be required to accrue that amount in its 1980 taxable income.

If RMAI is an accrual basis taxpayer (which is unclear from the majority's opinion), then under the same tax accounting principle, RMAI should be entitled to accrue the $308,443 as a commission expense deduction on its 1980 tax return. See *United States v. General Dynamics Corp.*, 481 U.S. ____ , ____ (1987).

CHABOT, GERBER, RUWE, and WHALEN, *JJ.*, agree with this dissent.