**GREENVILLE STEEL CAR COMPANY**

v.

**The UNITED STATES.**

No. 551–77.

United States Court of Claims.

Feb. 20, 1980.

John K. Barry, Pittsburgh, Pa., attorney of record, for plaintiff. Gregory D. Curtis, Pittsburgh, Pa., of counsel.

James S. Maxwell, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before DAVIS, BENNETT and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This is a case of first impression under a now expired provision of the Tax Reform Act of 1969. The issue is whether plaintiff may, pursuant to I.R.C. § 184, amortize, over a 5-year period, certain railroad freight cars leased to three companies which are not railroads. The case is before the court on the parties' cross-motions for summary judgment. We conclude that the cars leased by plaintiff to the nonrailroad companies were not "qualified railroad rolling stock" within the meaning of I.R.C. § 184(d)(1)(A). Therefore, we grant defendant's motion for summary judgment.

Plaintiff, Greenville Steel Car Company manufactures and rebuilds all types of railroad cars for sale or lease to railroads and shippers. In 1970 and 1971, plaintiff leased newly manufactured freight cars to the Erie Lackawanna Railway Company, PPG Industries, Inc., The Cleveland Electric Illuminating Company, and Consolidated Coal Company. The three nonrailroad companies then placed their leased cars in service with railroads under tariff arrangements. These cars were used to haul freight needed in the conduct of the particular business of the lessee.

In its federal corporate income tax returns for the years 1970, 1971, and 1972, plaintiff claimed amortization deductions with respect to all of the leased freight cars based on the 5-year period provided in section 184. On audit of plaintiff's tax returns for the years 1971 and 1972, the Internal Revenue Service allowed the rapid amortization deductions only with respect to the cars leased to the Erie Lackawanna Railway. With respect to the cars leased to the three nonrailroad companies, which constituted the great majority of the freight cars leased by plaintiff, the Service determined that plaintiff was entitled to claim only the normal depreciation deductions allowable under I.R.C. § 167 based on a 15-year useful life.

Plaintiff paid the deficiencies assessed for the years 1971 and 1972 and filed timely claims for refund. After these claims were denied by the Service on November 21, 1975, plaintiff filed the present suit on November 15, 1977.

■ Section 184 was enacted in 1969 at the same time as the repeal of the investment tax credit. Section 184 was intended to replace the investment credit as an incentive to encourage the continuation of the current level of investment in railroad freight cars.[1] Section 184 provides in pertinent part:

(a) *Allowance of deduction*

Every person, at his election, shall be entitled to a deduction with respect to the amortization of the adjusted basis (for determining gain) of any qualified railroad rolling stock (as defined in subsec-

1. S.Rep.No. 91–552, 91st Cong., 1st Sess. 252 (1969), *reprinted in* [1969] U.S.Code Cong. & Admin.News, pp. 2027, 2288. When the investment credit was reenacted in 1971, Congress allowed taxpayers to elect either the investment credit or rapid amortization, but not both.

*See* I.R.C. § 48(a)(8). The rapid amortization provision was originally due to expire in 1974 but was extended through 1975 by section 3 of Pub.L.No. 93–625, 88 Stat. 2108, 2109 (1975), and then allowed to expire.

tion (d)), based on a period of 60 months. * * *

* * * * * *

(d) *Qualified railroad rolling stock*

* * * the term "qualified railroad rolling stock" means, for purposes of this section, rolling stock of the type used by a common carrier engaged in the furnishing or sale of transportation by railroad and subject to the jurisdiction of the Interstate Commerce Commission if

(1) such rolling stock is—

(A) used by a domestic common carrier by railroad on a full-time basis, * * *

Defendant argues that the freight cars leased by plaintiff to the three nonrailroad companies were not "qualified railroad rolling stock" which was "used by a domestic common carrier by railroad."[2] Defendant's interpretation of the statute is based on certain statements in the committee reports on the Tax Reform Act of 1969. The Senate Finance Committee, for example,[3] stated:

* * * The 5-year (but not the 4-year) amortization also is to be available to lessors to the extent that their rolling stock is leased to a domestic railroad or railroad company. In no event is either the 5-year (or 4-year) amortization provision to be available in the case of rolling stock owned and used by companies other than domestic railroads or rolling stock leased to companies other than domestic railroads. [S.Rep.No. 91–552, 91st Cong., 1st Sess. 253 (1969), *reprinted in* [1969]

U.S.Code Cong. & Admin.News, pp. 2027, 2289.]

Plaintiff's primary argument[4] is that cars leased by a nonrailroad company but then placed in service with a railroad under standard tariff arrangements should be considered to be "used" by a railroad within the meaning of section 184(d)(1)(A). Plaintiff's argument is made on three levels: an analysis of the wording of the statute and the legislative history, an analysis of the basic purpose of the statute and its economic effects and, finally, an appeal against the application of form over substance.

First, plaintiff suggests that Congress would have said "owned by or leased to" a railroad instead of "used" by a railroad if it had intended the interpretation urged by defendant. Plaintiff reminds the court of our statement in *Lykes Bros. S.S. Co. v. United States*, 513 F.2d 1342, 1349, 206 Ct.Cl. 354, 368 (1975), that the language of the statute itself is the best indication of the legislative intent. However, we also noted that when the requirements of the statute are detailed and specific, they must be applied with precision. This is hardly the case here. Plaintiff as the owner, the nonrailroad company as the lessee, and the railroad hauling the freight car can all be considered to be using the car: the plaintiff to earn rental income, the lessee to move freight needed in its business, and the railroad to earn transportation charges. Since the constructions urged upon us by both parties are reasonable interpretations of the statutory language, we should not disregard any expressions of legislative intent in the

---

**2.** Defendant however concedes that the cars leased to the three nonrailroad companies were used on the railways of domestic common carriers by railroad on a full-time basis and were not being used on private rail lines to any extent.

**3.** *See also* H.Conf.Rep.No. 91–782, 91st Cong., 1st Sess. 327 (1969), *reprinted in* [1969] U.S. Code Cong. & Admin.News, pp. 2392, 2442, which states:

"* * * The 5 (or 4) year amortization provision is not available, however, in the case of rolling stock owned and used by companies other than railroads or rolling stock leased to companies other than railroads."

**4.** Plaintiff also argues that under section 184(a) "[e]very person," and not just railroads and lessors to railroads, is entitled to elect rapid amortization. This argument is without merit. Section 184(a) allows the election to "[e]very person" who has a depreciable interest in "qualified railroad rolling stock." The issue now before us is whether qualified railroad rolling stock only includes rolling stock owned by or leased to a railroad. If so, it would be unnecessary and redundant also to restrict the class of persons who may elect rapid amortization.

committee reports. *Commissioner v. Bilder,* 369 U.S. 499, 504, 82 S.Ct. 881, 883, 8 L.Ed.2d 65 (1962).

■ The Senate Finance Committee and the Conference Committee have spoken clearly and unequivocally on precisely the issue now before the court. Plaintiff urges the court not to take an isolated phrase out of context [5] and suggests that the language in the committee reports was only intended to disqualify railroad cars used on the various private railways operated by steel, coal, mining, and utility companies. To accept plaintiff's suggestion would radically alter the plain meaning of the committees' statements. The Senate Finance Committee stated that *in no event* was rolling stock leased to companies other than domestic railroads to be eligible for rapid amortization. The broad and sweeping statements in the committee reports cannot sensibly be construed as applying only to the limited situation suggested by plaintiff. Furthermore, the legislative history, when viewed in context, demonstrates a congressional intent to benefit railroads directly and primarily. The House bill provided rapid amortization only for domestic common carriers by railroad.[6] The Senate report indicates that the Senate bill was intended to expand the coverage of the provision but only so far.

It is clear that the underlying purpose of section 184 was to encourage investment in railroad freight cars thereby alleviating the shortage of such cars.[7] L. E. Peabody & Associates, Inc., an economic consulting firm, has prepared a substantial report for plaintiff in connection with this litigation. The basic conclusions of the report are that the operation of shipper-furnished cars was quite profitable to the railroads and directly increased the overall supply of rolling stock in the United States and that, therefore, the failure to provide any tax incentive for shipper-furnished cars would have a detri-

mental effect on the overall freight car fleet. Defendant has not submitted any economic data to dispute the conclusions of the report, but as indicated above, we believe that Congress has spoken clearly on this subject.

■ While a statute should be construed in light of its overall purpose, this court may not substitute its judgment for that of Congress as to the best means of achieving that purpose. Even if Congress did believe that an extension of a tax incentive to shipper-furnished cars would help to relieve the shortage of freight cars, Congress could have reasonably determined that such an extension would only be marginally effective for the amount of lost tax revenue. The number of cars in the private fleet was growing in the years before 1970 although the number of cars in the railroad-owned fleet was dwindling. Thus, we conclude that Congress wished to target the tax relief for the ailing portion of the railroad industry.

Finally, plaintiff argues that defendant's interpretation of section 184 exalts form over substance as plaintiff could have secured rapid amortization by using a slightly different form of arrangement which would still permit the railroad cars to be used exclusively to haul freight for a particular shipper. For example, the lessee nonrailroad company could have subleased the cars to a railroad, or, as was in fact done, the cars leased by plaintiff to a railroad could be assigned on a more or less permanent basis to a particular shipper. We are not convinced that these transactions are economically equivalent even though they may be indistinguishable in terms of how the cars are physically used. In addition, there is some doubt whether these arrangements would qualify under section 184 despite the fact that the Internal Revenue Service did not challenge in this particular instance the

---

5. *See,* for example, *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 93–94, 55 S.Ct. 50, 54, 79 L.Ed. 211 (1934).

6. H.R. 13270, 91st Cong., 1st Sess. § 705 (1969); H.Rep.No. 91–413, 91st Cong., 1st Sess. 200

(1969), *reprinted in* [1969] U.S.Code Cong. & Admin.News, pp. 1645, 2019.

7. *See* note 1 *supra.*

amortization with respect to cars leased to the Erie Lackawanna Railway Company and used primarily to haul inventory for Ford Motor Company. Regulations under section 184 were proposed but never finalized since section 184 was allowed to expire. Proposed Treas. Reg. § 1.184–2(a)(3)(iii) [8] provides in part:

> * * * For purposes of this section a specifically identified unit of railroad rolling stock which is assigned, either directly or *pursuant to an arrangement which has the effect of a direct assignment,* to a particular shipper other than on a shipment by shipment basis shall be deemed to be used by the shipper and not by the railroad which transports the rolling stock. [Emphasis added.]

8. Published, 36 Fed.Reg. 16,924 (1971), and withdrawn, 43 Fed.Reg. 23,610 (1978).

Accordingly, we hold that the freight cars leased by plaintiff to PPG Industries, Inc., The Cleveland Electric Illuminating Company, and Consolidated Coal Company were not "qualified railroad rolling stock" within the meaning of section 184(d) of the Internal Revenue Code. Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.