## ANCHOR HOCKING CORPORATION

v.

## The UNITED STATES.

### No. 459–84T.

United States Claims Court.

Nov. 14, 1986.

Kenneth E. Updegraft, Jr., Cleveland, Ohio, for plaintiff. Christine Lutgens, of counsel.

Theodore D. Peyser, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

MARGOLIS, Judge.

At issue in this tax refund case is whether the Secretary of the Treasury exceeded his authority in promulgating Treasury Regulation 1.994–1(c)(6)(v). The regulation prescribes a method of computing the combined taxable income of a Domestic International Sales Corporation and its related supplier.

Plaintiff asserts that the regulation is legislative in character, unauthorized, and invalid because it contravenes the language and intent of the Internal Revenue Code of 1954, 26 U.S.C. [the Code]. The plaintiff seeks a refund of $38,674 for 1975 and 1976, plus interest, on the ground that the Internal Revenue Service had no authority to assess the taxes paid.

The defendant seeks to uphold the regulation as a valid exercise of the Secretary's authority that is consistent with the Code. Both parties have moved for summary judgment. The court grants the defendant's motion for summary judgment and denies the plaintiff's motion.

## FACTS

The plaintiff, Anchor Hocking Corporation, is a domestic corporation that manufactures tableware products and other glass, plastic and pottery items sold domestically and abroad. In 1972, to take advantage of provisions in the Revenue Act of 1971 [Pub.Law No. 92–178, 85 Stat. 497], it incorporated Anchor Hocking International Corporation [AHI] as a wholly-owned subsidiary to act as its commission agent in connection with the export sale of its manufactured products, i.e., AHI was entitled to receive commissions from the plaintiff in accordance with the intercompany pricing rules of 26 U.S.C. § 994 (1976). AHI elected to be treated as a "Domestic International Sales Corporation" ["DISC"] under newly enacted sections 991 et seq. of the Code.

The DISC provisions of the Code (26 U.S.C. §§ 991–997 (1976)) were enacted to encourage exports of domestic products by placing domestic corporations on an economic par with corporations using foreign subsidiaries to sell exports. Prior to enactment, foreign subsidiaries had an advantage over domestic companies in that income from the activities of foreign subsidiaries was not taxed until it was repatriated. For a discussion on the DISC statutory scheme see *Thomas International Limited v. United States,* 6 Cl.Ct. 414, 416–17 (1984), *rev'd,* 773 F.2d 300 (Fed.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986).

The method employed to assist domestic exporters was a deferral of federal tax on income derived from exports. Under the statutory scheme, a domestic company could organize a DISC as a "shell" corporation whose sole function would be its use as an accounting device for measuring the amount of export earnings subject to tax deferral. The DISC itself is not taxed. Rather, its shareholders are taxed on a specified percentage of DISC income as if a dividend distribution had been made at the end of the taxable year. The remainder of the income, called accumulated DISC income, remains untaxed until it is actually distributed to the shareholders, or the DISC loses its special status.

In this case, AHI (the DISC) derived its income by acting as a commission agent for the plaintiff. Commissions "earned" by AHI were determined in accordance with intercompany pricing rules set forth in section 994 of the Code and were based on export sales volume. The commissions received by AHI for 1975 and 1976 (the tax years in question) were, respectively, $4,895,408 and $5,560,776.

AHI earned additional income during 1975 and 1976 by collecting export accounts receivable sold to it by plaintiff at a discount from face value. The difference between the face value of the accounts receivable and the sale price was $225,500 in 1975 and $198,256 in 1976. The appropriate tax treatment to be accorded these discounts is at the center of this controversy.

Plaintiff alleges that the discounts AHI earned are includable as income when calculating the "combined taxable income" [CTI] of parent and DISC under Code section 994, and that the discounts are interest expense that the plaintiff is entitled to apportion and deduct ratably from its various sources of income.

On the other hand, the defendant asserts that Treasury Regulation 1.994–1(c)(6)(v) effectively precludes such treatment by requiring that CTI be reduced by the total amount of the discount where accounts receivable are transferred by a related supplier to its DISC. The regulation provides:

> (v) If an account receivable arising with respect to a sale of export property is transferred by the related supplier to a DISC which is a member of the same controlled group within the meaning of § 1.993–1(k) for an amount reflecting a

discount from the selling price taken into account in computing ... combined taxable income of the DISC and its related supplier, *then the combined taxable income from such sale shall be reduced by the amount of the discount.*

26 C.F.R. § 1.994–1(c)(6)(v)(1977) [emphasis added].

This regulation was promulgated under 26 U.S.C. § 7805 (1976), which generally empowers the Secretary of the Treasury to prescribe regulations necessary to interpret the Code. The regulation limits the types of income includable in the CTI figure by treating discount expenses between a DISC and its related supplier as expenses directly related to the sale of export property. Such expenses are allocated and deducted from export income—the net effect being zero. Plaintiff asserts that the regulation exceeds the authority of the Secretary under § 7805 and is invalid because it amounts to legislation.

## DISCUSSION

### A. *The Appropriate Standard of Review*

The standard of review used by this court to determine whether a Treasury Regulation promulgated under 26 U.S.C. § 7805 is invalid is whether the regulation is "unreasonable and plainly inconsistent with the revenue statutes." *Thomas International Limited v. United States,* 773 F.2d 300, 303 (Fed.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986). This court generally must defer to Treasury Regulations that implement a Congressional mandate in some reasonable manner. *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156,

169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981); *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967). Regulations issued under the authority of § 7805(a) are entitled to less deference than those issued under a specific statutory grant of authority. *United States v. Vogel Fertlizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). Interpretive regulations are reasonable and valid if they harmonize with the statute's origin and purpose. *Id.* at 26, 102 S.Ct. at 828.

Consideration should first be given to whether the regulation harmonizes with the statutory language. *Id.* at 25, 102 S.Ct. at 827. Where the statutory language is ambiguous, the legislative history is relevant to determine if the challenged regulation harmonizes with the statute's origin and purpose. *Id.* at 25–26, 102 S.Ct. at 827–28; *Greenville Steel Car Co. v. United States,* 222 Ct.Cl. 400, 404, 615 F.2d 911, 913–14 (1980); *Ellis First National Bank of Bradenton v. United States,* 213 Ct.Cl. 44, 55–56, 550 F.2d 9, 15 (1977).

Defendant admits that the phrase "CTI" in § 994 is ambiguous; the court must thus investigate the legislative history to determine if the challenged regulation comports with Congressional intent.

### B. *Plaintiff's Argument on Invalidity*

Plaintiff asserts that the language of Code section 994, as interpreted by use of its legislative history, permits interest earned on discounts to be included in the combined taxable income figure, even when those discounts arose from the same accounts receivable that were used to determine DISC commissions and DISC income.*

---

* Section 994 provides in part:

Inter-company pricing rules

(a) In general.—In the case of a sale of export property to a DISC by a person described in section 482, the taxable income of such DISC and such person shall be based upon a transfer price which would allow such DISC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceed....

\*    \*    \*    \*    \*    \*

(2) 50 percent of the combined taxable income of such DISC and such person which is attributable to the qualified export receipts on such property derived as the result of a sale by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts....

\*    \*    \*    \*    \*    \*

(b) Rules for commissions, rentals, and marginal costing.—The Secretary shall prescribe regulations setting forth—

Plaintiff argues that the Secretary of the Treasury had no authority to promulgate a regulation that stated otherwise, even if Congress inadvertently overlooked any potential double benefit that might result.

In support of its argument, plaintiff emphasizes that the legislative history of the statute requires that AHI's discount income be included in combined taxable income and that the plaintiff be allowed to deduct the correlative discount expense among its domestic and foreign income sources, not solely its export income. The relevant portion of the House Report states that:

> a DISC may earn up to 50 percent of the combined taxable income of the DISC and the related person arising from the sale of the [export] property, plus . . . 10 percent of the DISC's export promotion expenses attributable to the sale. For this rule, the combined taxable income from the sale of export property is to be determined *generally in accordance with the principles applicable under section 861. . . .* These rules *generally* allocate to each item of gross income all expenses *directly* related thereto, and then apportion other expenses among all items of gross income on a *ratable* basis.

H.Rep. No. 533, 92d Cong., 1st Sess. 74, *reprinted in* 1971 U.S.Code Cong. & Ad. News 1825, 1887. [emphasis added].

There are at least two problems with plaintiff's contentions regarding the legislative history. First, section 994 is primarily concerned with determining the amount of primary income that will be attributed to the DISC, *i.e.*, its attention is focused on commissions or other forms of primary income originally contemplated by Congress and set forth at 26 U.S.C. § 994(a)(1)–(3). Section 994 does not necessarily address the appropriate treatment of other poten-

tial types of income not contemplated by Congress but conceivable by imaginative tax counsel.

Second, both the Code and the legislative history underlying section 994 are couched in language that contemplates the possibility of exceptions. Section 994 does not specifically mention section 861 as the required method of attributing income. As emphasized in the passage of legislative history quoted above, combined taxable income arising from the sale of export property is to be determined "generally in accordance with the principles" of section 861. H.Rep. No. 533, *supra*, at 74, 1971 U.S.Code Cong. & Ad.News at 1887.

Thus, even if the legislative history contemplates AHI's type of discount income, it leaves room for variations from the prescribed treatment when those variations are necessary to lend a reasonable interpretation to the Code and are not at odds with other Code provisions.

Other Code provisions convince the court that the Secretary's regulation is fully in keeping with the intent of Congress to limit reasonably the benefits accorded domestic exporters. One example is the provision dealing with "producer loans." These are interest bearing loans made by the DISC to the parent. As foreseen by Congress, such loans ostensibly could generate interest income for the DISC. DISC income would normally qualify as an export receipt under section 993(a), which would render a portion of it eligible for tax deferral. Nevertheless, Congress provided, in section 995(b)(1)(A), that the interest on a producer's loan is deemed to be distributed to its shareholders. The purpose of this rule was to limit DISC tax benefits on income arising from this type of transaction. H.Rep. No. 533, *supra*, at 76–77, 1971 U.S.Code Cong. & Ad.News at 1890. The distribu-

---

(1) rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions, rentals, and other income, and

(2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a DISC is seeking to establish or maintain a market for export property.

\*　　\*　　\*　　\*　　\*　　\*

tion that is deemed to have occurred offsets any deductions that the producer-borrower might claim. Thus, the net effect of the interest paid and earned is zero, like the net effect of the regulation here in question.

In this case, the challenged regulation forces the related producer to allocate to and deduct discount expenses from export income. The result is similar to that prescribed by Congress under the producer's loan provisions. Thus the regulation harmonizes with the statute and does it no violence. The fact that the Secretary of the Treasury promulgated the regulation to clarify the treatment of discount interest and expense does not make the regulation invalid. Rather, it is part of the process contemplated by Congress in authorizing interpretive regulations under § 7805.

The court has considered plaintiff's argument that the challenged regulation arbitrarily discriminates against a DISC and *related* suppliers, but finds that argument unpersuasive. The regulation is reasonable and consistent with the Code. A regulation is not invalid simply because it is directed at transactions between related entities, one of which is fictional in character, if not in fact. Given the already highly fictionalized character of DISC taxation, the Secretary's regulation merely lent a reasonable interpretation to the Code provisions. In addition, § 994 itself applies only to sales to a DISC by "related" persons. 26 C.F.R. § 1.994–1(b) (1977). Thus, subsection (c)(6)(v) does not single out related suppliers for unfavorable treatment.

Having found Treasury Regulation 1.994–1(c)(6)(v) reasonable, not inconsistent, and in harmony with the statute's purpose, origin and language, it follows that plaintiff's claim for a refund of taxes paid pursuant to the regulation must be denied.

Accordingly, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion. The clerk will dismiss the complaint. Each party shall bear its own costs.