SERVO CORPORATION OF AMERICA AND SERVO INTERNATIONAL SALES CORPORATION, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Servo Corp. of Am. v. Commissioner
Docket No. 4643-93
United States Tax Court
T.C. Memo 1994-548; 1994 Tax Ct. Memo LEXIS 556; 68 T.C.M. (CCH) 1097; 68 Trade Cas. (CCH) P1097; October 31, 1994, Filed *556 Decision will be entered under Rule 155. For petitioners: Jeffrey M. Cole, Brian R. Gallagher, and Donald S. Snider. For respondent: Halvor N. Adams III and Donald Schwartz. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in the Federal income tax of Servo Corp. of America (Servo) in the amount of $ 58,931 for its taxable year ended October 31, 1984, and $ 578,235 for its taxable year ended October 31, 1986. After concessions by respondent, [1] *558 the issue for decision is whether Servo International Sales Corp. (Servo International), a wholly owned subsidiary of Servo, qualifies to be taxed as a domestic international sales corporation (DISC) for its taxable year ended February 29, 1984, as provided under sections 991 through 997. [2] In the event that we decide Servo International is not qualified to be taxed as a DISC during its taxable year ended February 29, 1984, then we must also decide: (1) Whether the $ 609,566 of gross income Servo International earned during its taxable year ended February 29, 1984, should be allocated to Servo under section 482; [3] (2) whether Servo is required to recognize an annual deemed distribution *557 from Servo International in the amount of $ 89,678 during its next 10 taxable years beginning with its taxable year ended October 31, 1985; [4] and (3) whether respondent erred in reducing Servo's income from deemed DISC distributions from Servo International by $ 428,220 for its taxable year ended October 31, 1984. *559 FINDINGS OF FACT Some of the facts and certain documentary evidence have been stipulated. The stipulations of fact are incorporated in this Memorandum Opinion by this reference and are found accordingly. At the time the petition was filed in the instant case, both Servo's and Servo International's principal offices were located in Hicksville, New York. Servo International was incorporated on March 23, 1972, and made an election, on that date, to be taxed as a DISC for Federal income tax purposes. Servo owned all the outstanding shares of Servo International's capital stock from March 23, 1972, through December 31, 1984. Petitioners entered into an "Agency Agreement", dated February 15, 1973, whereby Servo International acted as a commission agent, or commission DISC, for property exported by Servo. Servo recorded on its books the amount of the commissions it owed to Servo International on the last days of February and October. [5] The manner in which Servo recorded the commissions it owed to Servo International consisted of two different entries: A debit was entered into Servo's books to record Servo's commission expense and a corresponding credit was entered to record Servo's *560 liability to Servo International for the amount of the commissions. At the same time Servo recorded the commissions it owed Servo International, corresponding entries were made on Servo International's books: A debit was entered into Servo International's books to record Servo International's commissions receivable and a corresponding credit entered to record Servo International's commission income. After the close of Servo International's taxable year, Servo would usually "pay" the commission it owed to Servo International by selling Servo International an interest, equal to the amount of the commission earned by Servo International during its taxable year, in Servo's accounts receivable from its sales of export property. The sale of Servo's accounts receivable to Servo International would be confirmed by a letter agreement signed by officers of both corporations. The letter agreement, in relevant part, stated: This will confirm that we have this date sold to you an undivided interest in the entire pool of accounts receivable due Servo Corporation of America in the amount of * * * [amount of commissions Servo International accrued during its taxable year] which arose out of *561 the sale of export property and constitutes qualified export receipts within the meaning of Section 993(b)(3) of the Internal Revenue Code.
Servo and Servo International recorded, on their books, the sale of an interest in Servo's accounts receivable as an assignment by Servo of an interest in Servo's accounts receivable from the sale of export property. [6] In other words, Servo reflected its sale of interests in its accounts receivable to Servo International on its books as "Receivables Assigned", and Servo International would record its purchases of interests in Servo's accounts receivable as "Accounts Receivable Assigned". *562 Servo collected payments on the accounts receivable from the account debtors. Servo never actually paid Servo International when it ultimately collected on its accounts receivable. Instead, Servo would replace the accounts receivable on which it had collected payment with new accounts receivable from subsequent sales of export property. As a result, Servo International always had an interest in Servo's accounts receivable equal to the amount of the commissions it had earned from Servo. Servo recorded the collection of all of its accounts receivable, including those accounts receivable in which it had sold an interest to Servo International, on its books by debiting its cash account and crediting the accounts receivable. For Federal income tax purposes, Servo International did not report having distributed to Servo any of the amounts Servo collected on its accounts receivable that had been sold to it by Servo, and Servo did not report having received from Servo International an actual distribution of any of the amounts that Servo collected on its accounts receivable that it sold to Servo International. As of February 29, 1984, Servo had sold to Servo International an interest *563 in its accounts receivable from its sales of export property worth $ 896,789; i.e., an amount equal to the commissions that Servo International had earned during its taxable years prior to its taxable year ended February 29, 1984. Servo International earned $ 609,566 as a commission from Servo during its taxable year ended February 29, 1984. On February 29, 1984, Servo had only $ 415,432.33 worth of accounts receivable from its sales of export property. In order to be able to replace the interest in its accounts receivable that Servo had already sold to Servo International with new accounts receivable and to be able to pay Servo International the $ 609,566 commission it earned during its taxable year ended February 29, 1984, Servo needed accounts receivable in the amount of $ 1,506,355. Because Servo had accounts receivable in the amount of only $ 415,432.33 on February 29, 1984, Servo had a $ 1,090,922.67 shortfall in the amount of accounts receivable it needed in order to be able to pay Servo International the commission that it earned during its taxable year ended February 29, 1984, and to replace the $ 896,789 in accounts receivable that Servo sold to Servo International during *564 Servo International's prior taxable years. On February 24, 1984, Servo purchased a $ 1.1 million note issued by the Private Export Funding Corp. (the PEFCO note). The PEFCO note bore interest at a rate of 6 percent. Servo purchased the PEFCO note with money it borrowed from the European American Bank & Trust Co. pursuant to a revolving credit agreement. A handwritten note, dated February 24, 1984, from Servo's treasurer, Edgar W. Tappen, Jr., to Henry Blackstone, president of both Servo and Servo International, states: The Private Export Funding Corporation (PEFCO) loans are guaranteed by the Export Import Bank and is owned by some (54) commercial banks and (7) corporations, and has the highest Standard & Poors and Moody's [ratings]. One of its functions is to provide investments to taxpayers with DISC subsidiaries and is recognized by the IRS for this purpose.
Servo recorded the PEFCO note on its general ledger under the account labeled "Marketable Securities - Commercial Paper". To record the loan from the European American Bank & Trust Co., Servo increased the balance of its account labeled "Long-Term Loan Account" by $ 1.1 million. When the PEFCO note matured, Servo *565 reduced the balances of its accounts labeled "Marketable Securities - Commercial Paper" and "Long-Term Loan Account" by $ 1.1 million. The PEFCO note was not recorded on the books of Servo International, and no entries were made on Servo International's books to record the receipt of the proceeds from the maturity of the PEFCO note. Servo International reported total assets of $ 1,508,855 (consisting of $ 2,500 in cash and $ 1,506,355 in trade receivables) on Schedule L of its Federal income tax return, Form 1120-DISC, for its taxable year ended February 29, 1984. For Federal income tax purposes, Servo International did not report having distributed the $ 1.1 million in proceeds received from the maturity of the PEFCO note to Servo, and Servo did not report having received a $ 1.1 million actual distribution from Servo International. Servo International did not report making a $ 1.1 million loan to Servo. The $ 11,030.14 of interest income earned on the $ 1.1 million PEFCO note was recorded as interest income by Servo and was reported by Servo on its Federal income tax return for its taxable year ended October 31, 1984. None of the interest income was credited or reported by *566 Servo International. Servo recorded $ 5,515.07 of interest income on March 25, 1984, and $ 5,515.07 of interest income on April 29, 1984. On the same dates it recorded accounts receivable of the corresponding amounts; i.e., $ 5,515.07 on March 25, 1984, and $ 5,515.07 on April 29, 1984, totaling $ 11,030.14. When Servo was paid the $ 11,030.14 of interest income on April 29, 1984, it eliminated the $ 11,030.14 receivable from its books. For Federal income tax purposes, Servo International did not report having distributed the $ 11,030.14 of interest paid on the PEFCO note to Servo, and Servo did not report having received an actual distribution of interest from Servo International. Pursuant to Servo's manner of "paying" the commissions it owed to Servo International by selling it an interest in its accounts receivable from its sales of export property, Servo executed a document on March 22, 1984, confirming its sale to Servo International of a $ 609,566 interest in its accounts receivable. Mr. Tappen also prepared a list of Servo's accounts receivable from its sales of export property. The balance of such receivables due Servo was $ 415,432.33 as of February 29, 1984, $ 264,337.73 *567 as of March 22, 1984, and $ 749,491.74 as of April 29, 1984. The $ 1.1 million PEFCO note was not included in Mr. Tappen's totals of Servo's accounts receivable for the dates listed above. In the notice of deficiency, respondent determined, inter alia, that the $ 1.1 million PEFCO note was not an asset of Servo International, that less than 95 percent of the adjusted basis of Servo International's assets constituted "qualified export assets", and that Servo International failed to qualify for DISC status under section 992(a) for its taxable year ended February 29, 1984. OPINION As part of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, Congress enacted the DISC provisions, [7] which were designed to stimulate exports by providing tax deferral for a portion of the income earned by U.S. corporations from the sale or lease of domestic products to foreign buyers. LeCroy Research Sys. Corp. v. Commissioner, 751 F.2d 123, 124 (2d Cir. 1984), revg. on other grounds T.C. Memo. 1984-145; Brown-Forman Corp. v. Commissioner, 94 T.C. 919, 925 (1990), affd. 955 F.2d 1037 (6th Cir. 1992); *568 Gibbons Intl., Inc. v. Commissioner, 89 T.C. 1156, 1163 (1987). Under section 991, a qualifying DISC is not subject to Federal income tax. Instead, the DISC's shareholders are taxed currently on approximately one-half of the DISC's earnings while the other half of the DISC's earnings enjoys tax deferral until withdrawn from the DISC or until the corporation ceases to qualify as a DISC. CWT Farms, Inc. v. Commissioner, 755 F.2d 790, 794 (11th Cir. 1985), affg. 79 T.C. 86 (1982); LeCroy Research Sys. Corp. v. Commissioner, supra at 124; Dresser Indus., Inc. v. Commissioner, 92 T.C. 1276 (1989), affd. in part and revd. on other grounds 911 F.2d 1128 (5th Cir. 1990); Gibbons Intl., Inc. v. Commissioner, supra at 1163. In order to qualify as *569 a DISC, at least 95 percent of the corporation's gross receipts for the taxable year must be "qualified export receipts" and at least 95 percent of the adjusted basis of its assets must be the basis of "qualified export assets". Secs. 992(a)(1) and 993(a)-(c). Congress designed the "qualified export assets" test to ensure that the substantial benefits of tax deferral would be related to earnings reinvested in exporting. LeCroy Research Sys. Corp. v. Commissioner, supra at 124. An entity which qualifies for DISC status is treated as a separate corporation for Federal income tax purposes even though such an entity might not otherwise be respected for Federal tax purposes. Brown-Forman Corp. v. Commissioner, supra at 925; sec. 1.992-1(a), Income Tax Regs. As a result of the minimal organizational and capital requirements, a DISC may function solely "as an accounting device for measuring the amount of export earnings subject to tax deferral." Anchor Hocking Corp. v. United States, 11 Cl. Ct. 173, 174 (1986). In the instant case, respondent determined that Servo International did *570 not qualify as a DISC for its taxable year ended February 29, 1984, because less than 95 percent of the adjusted basis of its assets constituted "qualified export assets". Section 993(b)(3) includes within the definition of "qualified export assets" accounts receivable and evidences of indebtedness that arise from the sale, exchange, or other disposition of export property. SeeSam Goldberger, Inc. v. Commissioner, 88 T.C 1532, 1542 (1987). Commissions receivable that are earned by a commission agent DISC, such as Servo International, are treated as qualifying accounts receivable under section 993(b)(3) and are therefore treated as qualifying export assets. LeCroy Research Sys. Corp. v. Commissioner, supra at 124; Gibbons Intl., Inc. v. Commissioner, supra at 1164; sec. 1.993-2(a)(3), (d)(2), Income Tax Regs.If the parent corporation of a commission DISC is a "related supplier", as defined in section 1.994-1(a)(3), Income Tax Regs., then, in order for the commissions receivable of the DISC to be treated as "qualified export assets", the commissions receivable must be paid by *571 the parent corporation to the DISC within 60 days of the close of the DISC's taxable year. LeCroy Research Sys. Corp. v. Commissioner, supra at 124; Gibbons Intl., Inc. v. Commissioner, supra at 1165; sec. 1.994-1(e)(3)(i), Income Tax Regs. The parent corporation may pay the commissions receivable by a transfer of money, property (including accounts receivable from sales by or through a DISC), or by an accounting entry offsetting the DISC's commissions receivable account by a debt owed by the DISC to its parent corporation. Sec. 1.994-1(e)(3)(ii), Income Tax Regs.
In Rev. Rul. 75-430, 1975-2 C.B. 313, [8] the Commissioner ruled that where a DISC purchased accounts receivable (which arose from sales of certain export property upon which the DISC has earned a commission) from its parent corporation, and made the purchase by using the commission income the DISC earned from its parent corporation, the accounts receivable constituted "qualified export assets" under section 993(b)(3). Rev. Rul. 75-430,supra, does not require that *572 the accounts receivable purchased by the DISC be specifically identified or that the DISC collect payments from the account debtors. Upon demand by the DISC, however, the domestic parent must supply the DISC with a complete list of the accounts receivable in which the DISC acquired an interest, identifying each account debtor individually, the amount of the account, and the date on which it arose. Moreover, upon demand by the DISC, the domestic parent must notify each account debtor of the DISC's interest in the accounts and the extent of the DISC's interest therein and direct the account debtor to make payment directly to the DISC. In addition to accounts receivable from the sale of export property, obligations issued by a domestic corporation organized solely for the *573 purpose of financing sales of export property pursuant to an agreement with the Export-Import Bank of the United States under which such corporation makes export loans guaranteed by the Export-Import Bank are also treated as "qualified export assets". Sec. 993(b)(8). The Commissioner has ruled that PEFCO obligations acquired by a DISC either directly from PEFCO or outstanding obligations issued by PEFCO acquired by a DISC from parties other than PEFCO constitute "qualified export assets" under section 993(b)(8). Rev. Rul. 75-564, 1975-2 C.B. 314, as amplified by Rev. Rul. 79-153, 1979-1 C.B. 262. On February 29, 1984, Servo International reported the following assets on its Federal income tax return for its taxable year ended February 29, 1984: $ 2,500 in working capital and $ 1,506,355 of trades receivable; i.e., accounts and notes receivable. The $ 1,506,355 of trades receivable consisted of the following interests: The $ 896,789 interest in Servo's accounts receivable that Servo sold to Servo International as payments for the commissions Servo International earned during its taxable years prior *574 to its taxable year ended February 29, 1984, plus the $ 609,566 interest in Servo's accounts receivable that Servo sold to Servo International as payment for the $ 609,566 commission that Servo International earned during its taxable year ended February 29, 1984. As stated above, Servo never paid Servo International when it collected payment on its accounts receivable. Instead, Servo replaced the accounts receivable with new accounts receivable. As a result, Servo International always had an interest in Servo's accounts receivable equal to the amount of commissions it had earned from Servo. On February 29, 1984, Servo had only $ 415,432.33 of accounts receivable from its sales of export property. Consequently, Servo had a $ 1,090,922.67 ($ 1,506,355 - $ 415,432.33) shortfall in accounts receivable it needed to have on its books in order to replace the $ 896,789 in accounts receivable it had already sold to Servo International and to be in a position to sell Servo International $ 609,566 of its accounts receivable to satisfy the commission that Servo International had earned during its taxable year ended February 29, 1984. Petitioners contend that Servo purchased the $ 1.1 million *575 PEFCO note solely for the purpose of eliminating the shortfall in Servo's accounts receivable and enabling Servo International to satisfy the 95-percent "qualified export assets" test of section 992(a)(1)(B) and to retain its DISC status for its taxable year ended February 29, 1984. Respondent determined that the PEFCO note was not an asset of Servo International, and that, therefore, less than 95 percent of the adjusted basis of Servo International's assets constituted "qualified export assets". Accordingly, respondent determined that Servo International failed to qualify for DISC status during its taxable year ended February 29, 1984. The Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving that the determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners contend that the PEFCO note should be treated as an asset of Servo International under the "principles" of ownership established by the Commissioner in Rev. Rul. 75-430, supra. In other words, petitioners argue that the recordation of the PEFCO note on the schedule *576 of accounts receivable that Servo sold to Servo International was sufficient, under the principles of ownership of Rev. Rul. 75-430, supra, to transfer ownership in the PEFCO note to Servo International. Petitioners argue that their method of transferring an ownership interest in the PEFCO note was the exact same method that Servo used to transfer ownership in its accounts receivable, and such a method of transferring ownership was in accordance with the principles of Rev. Rul. 75-430, supra. Petitioners also argue that Servo's collection of the interest and the principal of the PEFCO note was similar to Servo's collection of payment on its accounts receivable, which is a method permitted by Rev. Rul. 75-430, 1975-2 C.B. 313. Accordingly, petitioners contend that the fact that Servo collected the proceeds on the PEFCO note and reported the interest income on its books and records and on its Federal income tax return is consistent with the principles of Rev. Rul 75-430, supra. Petitioners also argue that *577 their position that the DISC had an ownership interest in the PEFCO note is supported by the cash-flow forecast included in Servo's April 5, 1984, "Financial & Administration Report for the Board of Directors Meeting". The cash-flow forecast contains a footnote which states: Short term investments do not include M.L. Government Fund and Treasury Note ($ 459), or Private Export Funding Corp. (PEFCO) Note ($ 1100) purchased for DISC Corp. Bank borrowing does not include $ 1100, against the revolving credit line with EAB, to finance the PEFCO Note.
Additionally, petitioners contend that Mr. Tappen's February 24, 1984, note to Henry Blackstone, which states that the PEFCO notes had been approved by the Internal Revenue Service as an investment suitable for DISC's, is proof that Servo purchased the PEFCO note on behalf of Servo International. Finally, petitioners contend that the fact that the PEFCO note paid interest at the rate of 6 percent and Servo was required to borrow the necessary funds to purchase the PEFCO note at an interest rate of 11 or 12 percent is support for their contention that the note was purchased for Servo International because there was no rational *578 reason for Servo to purchase the PEFCO note other than for the purpose of maintaining Servo International's DISC status. Respondent contends that Rev Rul. 75-430, supra, applies only to accounts receivable and does not contain general "principles" of ownership applicable to assets such as PEFCO notes. Respondent also contends that, even if the "principles" of Rev. Rul. 75-430, supra, apply to assets such as the PEFCO note, petitioners failed to comply with the requirements of Rev. Rul. 75-430, supra. Respondent argues that the record in the instant case establishes that Servo International's regular practice was to record on its books and records all of the assets that it purchased from Servo or were purchased by Servo on behalf of Servo International. Respondent points to the fact that Servo International recorded on its books and records an ownership interest in an Export-Import bond purchased for Servo International by Servo during 1977 [9] and that it regularly recorded on its books and records the amount of accounts receivable that it purchased *579 from Servo out of the commission income Servo International earned from Servo. Respondent argues that Servo International's failure to record its interest in the PEFCO note on its books and records is evidence that Servo never transferred an ownership interest in the PEFCO note to Servo International. Additionally, respondent argues that even if Servo transferred an ownership interest in the PEFCO note to Servo International, there is no evidence in the record that shows that Servo International had the right to demand that Servo comply with the ownership requirements of Rev. Rul. 75-430, supra. Finally, respondent argues that Servo's recording of the PEFCO note on its general ledger under an account labeled "Marketable Securities - Commercial Paper" undermines petitioners' claim that Servo transferred an ownership interest in the PEFCO note to Servo International. After considering *580 the parties' arguments, we hold that the record in the instant case does not establish that Servo complied with Rev. Rul. 75-430, supra. Consequently, we need not decide petitioners' contention that the "principles" of that ruling apply to the transfer of PEFCO notes by a parent corporation to a DISC. Rev. Rul. 75-430, supra, contemplates that certain requirements will be met for accounts receivable to constitute "qualified export assets". As stated above, the ruling would require that petitioners establish Servo International's right, upon demand, to require that: (1) Servo furnish Servo International with a complete list of the accounts receivable in which it had acquired an interest; (2) Servo notify each account debtor that Servo International had acquired an interest in its account; and (3) Servo notify each account debtor that payment was to be made to Servo International. The record, however, does not contain any documentary evidence establishing that such requirements have been satisfied. As we interpret Rev. Rul. 75-430, supra, the *581 right of a DISC to demand that the proceeds of an account receivable be paid directly to it is the most important safeguard the ruling contains to ensure that a DISC is the legal owner of the accounts receivable that it purchased from its parent corporation. There is no documentary evidence in the record that establishes Servo International's right to demand that the proceeds of either the accounts receivable in which it had acquired an interest or the PEFCO note be paid directly to it. Petitioners have also failed to establish that any of the other requirements of Rev. Rul. 75-430,supra, have been met with regard to the interest in Servo's accounts receivable that Servo contends it transferred to Servo International, or with regard to the PEFCO note. Consequently, we do not need to reach the question of whether the benefits of the ruling would apply in the instant case. Petitioners point to certain indirect evidence to show that Servo International had an ownership interest in the note. Petitioners point to the fact that Servo recorded the PEFCO note on the same ledger on which it recorded the accounts receivable that it sold or *582 "assigned" to Servo International. We, however, conclude that such action is insufficient to sustain a finding that Servo International had an ownership interest in the PEFCO note. Petitioners also point to the financial report prepared for Servo's board of directors meeting, which did not include the PEFCO note in short-term investments. The persuasiveness of the financial report, however, is undermined by the fact that Servo recorded its ownership of the PEFCO note on its general ledger under an account labeled "Marketable Securities - Commercial Paper". Petitioners also point to Mr. Tappen's February 24, 1984, note to Henry Blackstone. That note, however, does not state that Servo intended to transfer an ownership interest in the PEFCO note to Servo International. It merely states that the Internal Revenue Service had approved PEFCO notes as investments for taxpayers with DISC subsidiaries. Petitioners also argue that there was no reason for Servo to purchase the PEFCO note other than to maintain Servo International's DISC status. We, however, do not find such argument to be persuasive. The argument is not evidence of the transfer of the PEFCO note to Servo International. *583 Petitioners alternatively contend that Servo made a valid and perfected assignment of the PEFCO note to Servo International under New York law. We disagree. To validly assign a note under New York law, the assignor may not retain either control over the funds transferred or the authority to collect or revoke the transfer of such funds. Miller v. Wells Fargo Bank Intl. Corp., 540 F.2d 548, 558 (2d Cir. 1976); Caribe Carriers, Ltd. v. C. E. Heath & Co., 784 F. Supp. 1119, 1126 (S.D.N.Y. 1992); Bangue Arabe et Intl. d' Investissement v. Bulk Oil (USA), Inc., 726 F. Supp. 1411, 1417 (S.D.N.Y. 1989); Modern Kitchens, Inc. v. Damiano, 273 N.Y.S.2d 151, 152 (Sup. Ct. 1966); In re Knowlton's Will, 143 N.Y.S.2d 111, 120 (Sup. Ct. 1955); Advance Trading Corp. v. Nydegger & Co., 127 N.Y.S.2d 800, 801 (Sup. Ct. 1953). In the instant case, petitioners have not shown (even if we were to apply the relaxed ownership requirements of Rev. Rul. 75-430, 1975-2 C.B. 313) that *584 Servo transferred an ownership interest in the PEFCO note to Servo International. Servo's collection and retention of the interest and the principal of the PEFCO note is evidence to the contrary. Consequently, we hold that petitioners have not shown that Servo made a valid assignment of the PEFCO note to Servo International under New York law. Based on the foregoing, we hold that petitioners have not shown that the PEFCO note was an asset of Servo International. Consequently, less than 95 percent of the adjusted basis of Servo International's assets constitutes "qualified export assets" within the meaning of section 993(b) at the close of Servo International's taxable year ended February 29, 1984. Accordingly, we hold that Servo International fails to qualify for DISC status during its taxable year ended February 29, 1984. In the notice of deficiency, respondent also determined that Servo International did not qualify as a DISC during its taxable year ended February 29, 1984, because Servo did not pay the commission it owed to Servo International within 60 days of the close of Servo International's taxable year as required by section 1.994-1(e)(3)(i), Income Tax Regs. Section *585 1.994-1(e)(3),Income Tax Regs., provides that in the case of a domestic parent corporation of a DISC which is a "related supplier" (as defined in section 1.994-1(a)(3), Income Tax Regs.), the commissions receivable owed to the DISC by its domestic parent will only be treated as "qualified export assets" under section 993(b) if they are paid within 60 days of the close of the DISC's taxable year. LeCroy Research Sys. Corp. v. Commissioner, 751 F.2d at 124; Gibbons Intl., Inc. v. Commissioner, 89 T.C. at 1165. The form of the payment to the DISC by the parent corporation is also governed by the regulations. The commissions receivable must be paid in cash, by a transfer of property, or by an accounting entry which offsets the DISC's commissions receivable account by a debt owed by the DISC to the parent corporation. Gibbons Intl., Inc. v. Commissioner, 89 T.C. 1156 (1987); sec. 1.994-1(e)(3)(ii), Income Tax Regs.
In the instant case, Servo owed $ 1,506,355 to Servo International at the close of its taxable year ended February 29, 1984. Of that total, $ 896,789 was attributable to commissions *586 Servo International earned during taxable years prior to its taxable year ended February 29, 1984, which Servo had paid by selling Servo International $ 896,789 of its accounts receivable from its sales of export property. The remaining $ 609,566 that Servo owed to Servo International was attributable to commissions Servo International earned during its taxable year ended February 29, 1984, which, as of the close of that taxable year, had not been paid. Petitioners contend that Servo paid the $ 609,566 in commissions it owed Servo International on March 22, 1984, when it sold Servo International $ 609,566 worth of its accounts receivable from its sales of export property. Petitioners also contend that, even if the PEFCO note was not an asset of Servo International, the $ 609,566 commission was paid to Servo International by April 29, 1984, because by that date Servo had generated sufficient accounts receivable from its sales of export property to cover its March 22, 1984, sale of accounts receivable to Servo International. Petitioners argue that there is no authority to support respondent's contention that Servo's accounts receivable must first be allocated to the $ 896,789 worth *587 of accounts receivable that Servo had already sold to Servo International before being allocated to the $ 609,566 worth of accounts receivable that Servo sold to Servo International on March 22, 1984. Respondent contends that, because Servo is a related supplier of Servo International, Servo was required to pay the $ 609,566 commission it owed Servo International by April 29, 1984, for Servo International's commission income to be considered a "qualified export asset". [10] Respondent contends that Servo's accounts receivable from its sales of export property must first be allocated to the $ 896,789 of accounts receivable that previously was sold to Servo International before they are allocated to the $ 609,556 interest in Servo's accounts receivable that Servo sold to Servo International on March 22, 1984. Respondent argues that as of March 22, 1984, Servo had only $ 264,337.73 in accounts receivable from its sales of export property. Consequently, respondent contends that the $ 264,337.73 in accounts receivable that Servo had on March 22, 1984, must first be allocated to the $ 896,789 of accounts receivable Servo had already sold to Servo International. Additionally, respondent *588 contends that on April 29, 1984, 60 days after the close of Servo International's taxable year ended February 29, 1984, Servo had only $ 749,491.74 of accounts receivable from the sale of export property, an amount which was also insufficient to cover the $ 896,789 of accounts receivable that Servo had already sold to Servo International. Respondent argues that only if the PEFCO note is considered an asset of Servo International could the $ 609,566 commission be considered paid to Servo International by April 29, 1984. We agree with respondent. The record *589 in the instant case contains a contract in which Servo purported to sell Servo International an interest in its accounts receivable from its sales of export property in compliance with Rev. Rul. 75-430, 1975-2 C.B. 313. The contract states that Servo International had an "undivided interest in the entire pool of accounts receivable due Servo Corporation" in an amount equal to the $ 609,566 commission Servo International earned during its taxable year ended February 29, 1984. Servo's treasurer, Mr. Tappen, testified at trial that the contracts executed by petitioners for Servo International's prior taxable years are identical to the contract petitioners executed on March 22, 1984, except for the amount of the interest in Servo's accounts receivable that Servo sold to Servo International. Because Servo International had an undivided interest in Servo's entire pool of accounts receivable equal to $ 896,789 prior to March 22, 1984, we interpret the contract between Servo and Servo International as requiring that all new accounts receivable be allocated first to the $ 896,789 interest in the accounts receivable that Servo sold to Servo International *590 during Servo International's prior taxable years. Moreover, although Rev. Rul. 75-430, supra, does not specifically prescribe the manner in which a parent corporation allocates its accounts receivable from its sales of export property that it sells or assigns to its DISC, the ruling, nevertheless, contemplates a situation in which the parent corporation substitutes new accounts receivable for those liquidated, unless the DISC requests that the proceeds be remitted to it. We conclude that both Rev. Rul. 75-430, supra, and the contracts executed by petitioners contemplate that Servo was to allocate its new accounts receivable first to the interests in its accounts receivable that Servo sold to Servo International during Servo International's taxable years prior to its taxable year ended February 29, 1984. As of April 29, 1984, the 60th day after the close of Servo International's taxable year ended February 29, 1984, Servo only had $ 749,491.74 worth of accounts receivable from its sales of export property. Because Servo did not generate enough accounts receivable from its sales of export *591 property to satisfy the $ 896,789 worth of accounts receivable that it sold to Servo International during its prior taxable years by April 29, 1984, we find that none of the $ 749,491.74 in accounts receivable Servo had as of April 29, 1984, can be allocated to the $ 609,566 commission Servo International earned during its taxable year ended February 29, 1984. Consequently, we hold that Servo did not pay the $ 609,566 commission within the 60-day period as required by section 1.994-1(e)(3)(i), Income Tax Regs.
In the instant notices of deficiency, respondent also determined that, in the event that we decide Servo International did not qualify to be taxed as a DISC during its taxable year ended February 29, 1984: (1) The $ 609,566 of gross income Servo International earned during its taxable year ended February 29, 1984, should be allocated to Servo under section 482; [11] (2) Servo is required to recognize an annual deemed distribution from Servo International in the amount of $ 89,678 during its next 10 taxable years beginning with its taxable year ended October 31, 1985; and (3) Servo's income from deemed DISC distributions from Servo International should be reduced by $ 428,220 *592 for its taxable year ended October 31, 1984. Petitioners did not address such determinations in their briefs. Consequently, we deem petitioners to have conceded such issues. Instead, petitioners contend that we should decide whether Servo International is entitled to make a deficiency distribution in compliance with section 992(c). Section 992(c)(1) provides in part that, if a corporation fails to satisfy the qualified export assets test of section 992(a)(1)(B) for the taxable year in question, it may still be entitled to be treated as a DISC if it makes a deficiency distribution *593 of an appropriate amount to its shareholders. Sim-Air, USA, Ltd. v. Commissioner, 98 T.C. 187, 199 (1992); CWT Farms, Inc. v. Commissioner, 79 T.C. at 1055-1056; Garnac Grain Co. v. Commissioner, T.C. Memo. 1991-363. Such a deficiency distribution may only be made by the corporation if its failure to meet the "qualified export assets" test of section 992(a)(1)(B) and its failure to make the distribution prior to the date it was made are "due to reasonable cause". Sec. 992(c)(2); Sim-Air, USA, Ltd. v. Commissioner, supra at 199; CWT Farms, Inc. v. Commissioner, supra at 1056; Garnac Grain Co. v. Commissioner, supra.Section 1.992-3(c)(2), Income Tax Regs., provides: (2) Determination of reasonable cause. In general, whether a corporation's failure to meet the 95 percent of gross receipts test, the 95 percent assets test, or both tests for a taxable year and its failure to make a pro rata distribution prior to the date on which it was made will be considered for reasonable cause *594 where the action or inaction which resulted in such failure occurred in good faith, such as failure to meet the 95 percent assets test resulting from blocked currency or expropriation, or failure to meet either test because of reasonable uncertainty as to what constitutes a qualified export receipt or a qualified export asset. For further examples, if a corporation's reasonable determination of the percentage of its total gross receipts that are qualified export receipts is subsequently redetermined to be less than 95 percent as a result of a price adjustment by the Internal Revenue Service under section 482, or if the corporation has a casualty loss for which it receives an unanticipated insurance recovery which causes its qualified export receipts to be less than 95 percent of its total gross receipts, then the failure to satisfy the 95 percent of gross receipts test is considered to be due to reasonable cause.
Petitioners contend that Servo International is entitled to make a deficiency distribution because its failure to satisfy the "qualified export assets" test of section 992(a)(1)(B) occurred in good faith; i.e., Servo reasonably believed that it transferred an ownership *595 interest in the PEFCO note to Servo International pursuant to Rev. Rul. 75-430, 1975-2 C.B. 313. Respondent disputes petitioners' characterization and, in any event, contends that, because Servo International has not attempted to comply with the requirements of section 992(c) (i.e., it has not made a deficiency distribution), it is premature for this Court to decide whether Servo International's failure to make a deficiency distribution was due to reasonable cause. Respondent also contends that, under section 992(c), Servo International is not permitted to make a deficiency distribution until our decision becomes final under section 7481. [12]
*596 In two prior cases we decided that it would be premature to resolve the issue of whether a taxpayer's failure to make a deficiency distribution was due to reasonable cause prior to the time such a distribution was actually made. See CWT Farms, Inc. v. Commissioner, supra at 1059; Garnac Grain Co. v. Commissioner, supra. In Sim-Air, USA, Ltd. v. Commissioner, supra at 201, however, the Court held that, because the Court's resolution of the issue of negligence under section 6653(a)(1) and (2) "greatly [facilitated] the disposition of the 'reasonable cause' issue", it would partially decide that issue prior to the time the taxpayer attempted to comply with section 992(c) by making a deficiency distribution. The Court also noted that the parties in Sim-Air had briefed the reasonable cause issue. Id. Unlike the situation in Sim-Air, we are not faced with having to decide whether petitioners were negligent under section 6653(a)(1) and (2). Additionally, although respondent has addressed the "reasonable cause" issue on brief, respondent addressed the issue only in response *597 to petitioners' request for such a decision. Consequently, we hold that, in the instant case, it would be premature to decide the "reasonable cause" issue prior to the time petitioner Servo International actually attempts to comply with section 992(c) by making an actual deficiency distribution. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent's notice of deficiency disallowed a net operating loss carryback from Servo's taxable year ended Oct. 31, 1989, to its taxable year ended Oct. 31, 1986, and disallowed a research credit carryback from Servo's taxable year ended Oct. 31, 1989, to its taxable year ended Oct. 31, 1986. Respondent now concedes that Servo is entitled to a $ 919,325 net operating loss carryback from its taxable year ended Oct. 31, 1989, to its taxable year ended Oct. 31, 1986, and that Servo is entitled to a research credit carryback of $ 32,242 from its taxable year ended Oct. 31, 1989, to its taxable year ended Oct. 31, 1986. A second notice of deficiency was issued on Apr. 23, 1993, in which respondent determined that the deficiency for Servo's taxable year ended Oct. 31, 1986, was only $ 82,504 and not the $ 578,235 that respondent determined in the original notice of deficiency.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent also determined a deficiency in Servo International's Federal income tax in the amount of $ 260,150 for its taxable year ended Feb. 29, 1984. According to respondent's notice of deficiency, if we decide that Servo International did not qualify as a DISC during its taxable year ended Feb. 29, 1984, and that all, or part, of its gross income is not allocable to Servo under sec. 482, then we must decide whether Servo International's income is taxable to Servo International.↩
4. Respondent determined that Servo must recognize $ 89,678 (one-tenth of the $ 896,789 of DISC income Servo International had accumulated as of Feb. 29, 1984) over Servo's next 10 taxable years beginning with its taxable year ended Oct. 31, 1985. Respondent determined that the $ 89,678 deemed distribution to Servo would: (1) Increase, by $ 89,678, Servo's taxable income for its taxable year ended Oct. 31, 1986; (2) reduce, by $ 89,678, the net operating loss Servo carried back from its taxable year ended Oct. 31, 1989, to its taxable year ended Oct. 31, 1986; and (3) reduce, by $ 21,127, the amount of the research credit that Servo carried back from its taxable year ended Oct. 31, 1987, to its taxable year ended Oct. 31, 1984.↩
5. Servo's taxable year ended October 31, and Servo International's taxable year ended February 28 or 29.↩
6. For example, Servo recorded a commission expense and a commission payable in the amount of $ 366,268 on Oct. 31, 1982, and $ 111,371 on Feb. 28, 1983. Servo then recorded a $ 477,639 assignment of accounts receivable to Servo International.↩
7. The DISC provisions are contained in secs. 991 through 997↩.
8. The Commissioner's rulings are not binding precedent in this Court. Tandy Corp. v. Commissioner, 92 T.C. 1165, 1170 (1989) (citing Stark v. Commissioner, 86 T.C. 243, 250-251↩ (1986)).
9. Servo International also recorded the interest paid on the Export-Import bond as income.↩
10. Although no formal stipulation has been entered by the parties as to whether Servo should be treated as a "related supplier" vis-a-vis Servo International, both parties in their briefs analyze the issue before us in the context of the rules applicable to payments and accounts receivable due to a DISC from a related supplier. In light of the parties' reliance on those rules, we also analyze the issue before us on the assumption that Servo was a related supplier.↩
11. Respondent also determined a deficiency in Servo International's Federal income tax in the amount of $ 260,150 for its taxable year ended Feb. 29, 1984. The notice of deficiency determined that, if it is decided that Servo International did not qualify as a DISC during its taxable year ended Feb. 29, 1984, and that all or part of its gross income is not allocable to Servo under sec. 482, then such income is taxable to Servo International.↩
12. Respondent relies on sec. 1.992-3(c)(3), Income Tax Regs., which, in pertinent part, provides: (3) Time limit for deficiency distribution. Except as otherwise provided in this subparagraph, the time limit prescribed by this subparagraph for making a deficiency distribution is satisfied if the amount of the distribution required by paragraph (b) of this section is made within 90 days from the date of the first written notification to the Corporation by the Internal Revenue Service that it had not satisfied the 95 percent of gross receipts test or the 95 percent assets test or both tests, for a taxable year. Upon a showing by the corporation that an extension of the 90-day time limit is reasonable and necessary, the Commissioner may grant such extension of such time limit. In any case in which a corporation contests the decision of the Internal Revenue Service that such corporation has not met the 95 percent of gross receipts test, the 95 percent assets test, or both tests, an extension of the 90-day time limit will be allowed until 30 days after the final determination of such contest. The date of the final determination of such contest shall, for purposes of section 992(c), be established in the manner specified in subdivisions (i) through (iv) of this subparagraph: (i) The date of final determination by a decision of the United States Tax Court is the date upon which such decision becomes final, as prescribed in section 7481.↩